UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

KIN & COMPANY INC.,

        Plaintiff,

   -v-                                    No.  1:21-cv-09317-LTS

MATTE PROJECTS LLC

        Defendant.

--------------------------------------------------------x


MEMORANDUM ORDER

      Plaintiff KIN & Company Inc. ("KIN" or "Plaintiff") brings this action against Matte Projects LLC ("Matte" or "Defendant"), asserting claims for breach of contract and account stated, arising principally from alleged breaches of KIN's "Terms of Business Permanent & Contract" (docket entry no. 14-1 ("Term Sheet")) which KIN submitted to Matte on December 11, 2019, and which KIN submitted in a slightly updated form (docket entry no. 14-5 ("Updated Term Sheet" and, together with the Term Sheet, the "Term Sheets")) on March 16, 2021.  (See docket entry no. 1 ("Compl." or "Complaint").)  KIN does not allege that Matte ever signed the Term Sheets.  (Id.)

      Before the Court is Matte's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket entry no. 10.)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1332.  The Court has reviewed the parties' submissions thoroughly.  For the following reasons, Matte's motion is denied as to the breach of contract claim.  Matte's motion is granted in part and denied in part as to the account stated claim.

BACKGROUND

The following facts, which are alleged in the Complaint or drawn from documents integral to the Complaint, are taken as true for the purpose of Matte's motion to dismiss.  KIN "is an employment recruiting firm that places candidates in both permanent and contract positions." (Compl. ¶ 19.)  Around December 11, 2019, Matte's HR manager, one Ms. Bahnmuller ("Bahnmuller") contacted KIN and requested that KIN source candidates for open positions at Matte.  (Id. ¶ 30.)  That same day, Matte sent Bahnmuller a copy of the Term Sheet, as well as a list of candidates.  (Id. ¶ 31.)  The next day, Bahnmuller confirmed receipt of these documents. (Id. ¶ 32.)  KIN does not allege that the Term Sheet was ever signed.

The Term Sheet contained provisions defining permissible forms of acceptance, including acceptance "[b]y continuing to instruct KIN + CO. after receipt of these [t]erms" (Term Sheet ¶ 2), as well as the services to be rendered by KIN (id. ¶¶ 3, 4, 7).  The Term Sheet also defines the point at which KIN's services would trigger a payment obligation:

> KIN + CO.'s fee is earned if a [c]andidate introduced by KIN + CO.
> accepts a position, as a result of KIN + CO.'s referral, introduction, or
> otherwise, with [Matte] in any capacity.  This includes as an employee,
> consultant, or independent contractor, within 12 months of the most recent
> activity on behalf of that [c]andidate introduced by KIN + CO.

(Id. ¶ 4.6.)  Further provisions define an "introduction" of a placement candidate (id. ¶ 4.7), mandate payment within 7 days of a placed employee's start date (id. ¶ 5.1), and define KIN's fee structure in detail (id. ¶ 4.10).

On February 4, 2020, KIN introduced a candidate, Ms. Shah ("Shah") to Matte, which offered Shah a position on February 24, 2020.  (Compl. ¶¶ 37-38.)  Shah accepted the next day.  (Id.)  Per the Term Sheet, KIN was owed a placement fee of $16,500, representing 15 percent of Shah's first-year salary, for this placement.  (Id. ¶ 39.)  On February 25, 2020, KIN

issued Invoice 0295 (the "Shah Invoice") for this amount to Matte, due May 11, 2020, and Matte confirmed receipt, but did not pay Shah's placement fee on the basis that Shah's start date had been delayed.  (Id. ¶¶ 40-43.)  On September 15, 2020, Matte informed Plaintiff that Shah "had done 'some freelance work' for Matte during the year," which should have immediately triggered Shah's placement fee, but the fee was not paid.  (Id. ¶ 44-45.)

On June 24, 2020, Max Pollack, Matte's co-founder, directed KIN to begin recruiting for two other positions.  (Compl. ¶ 46.)  On July 9, 2020, KIN sent Matte a shortlist of candidates for the two positions and another copy of the Term Sheet.  (Id. ¶ 47.)  KIN then introduced to Matte Ms. Kocourek ("Kocourek") and Mr. Barlage ("Barlage"), both of whom Matte subsequently hired.  (Id. ¶¶ 52, 56, 77.)  As a result of these hires, KIN sent Matte three separate invoices - Invoice 0314 (for $6,300, covering Kocourek's initial hiring on a three-month contract), Invoice 0327 (for $37,500, covering Barlage's hiring for a permanent position) (the "Barlage Invoice"), and Invoice 0334 (for $21,450, covering Kocourek's subsequent hiring for a permanent position, and inclusive of a "courtesy discount" of $6,300 premised upon the expectation that this amount would be paid) (the "Kocourek Invoice").  (Id. ¶¶ 62, 63, 78.) Matte did not make any payments on time (id. ¶¶ 58-62, 65, 71, 73-75), but eventually paid $6,300 on Invoice 314 (id. ¶ 62), and $9,350 on the Barlage Invoice (id. ¶ 72).  On January 11, 2021, KIN sent Matte a statement for outstanding payments due on these three invoices, calculating a total of $49,600, excluding interest computed pursuant to the Term Sheet.  (Id. ¶ 80.)  On February 16, Matte paid KIN $9,350 against this total, leaving $40,250 outstanding, excluding interest and the Shah Invoice.  (Id. ¶¶ 85-86.)

On March 15, 2021, with these amounts still outstanding, KIN directed Matte "to commence work on a new search for an executive level Head of Strategy role."  (Id. ¶ 92.)  The

next day, KIN sent Matte an "updated Terms of Business and fee structure" (the "Updated Term Sheet"), providing notice that KIN would now charge a 20 percent fee for any hire whose "remuneration package" exceeded $150,000.  (Id. ¶¶ 92-93.)  Though Brett Kincaid ("Kincaid"), one of Matte's founders, confirmed receipt of the Updated Term Sheet (id.), KIN does not allege that the Updated Term Sheet was ever signed.  Aside from its updated fee schedule, the Updated Term Sheet was largely identical to the Term Sheet.  (See Term Sheet, Updated Term Sheet.) On April 5, KIN paid Matte an additional $5,000, leaving $35,250 outstanding, exclusive of interest and the Shah Invoice.  (Id. ¶¶ 96-97.)

On May 24, 2021, KIN directed Matte to begin recruitment for a "Head of Experiential position," and KIN again provided the Updated Term Sheet.  (Compl. ¶¶ 102-03.) On June 3, 2021, KIN reached out regarding all outstanding payments which, including the Shah Invoice, then totaled $51,750.  (Id. ¶ 116.)  Two weeks later, Matte sent KIN $5,000, bringing the total outstanding to $46,750, according to an "Activity Statement" sent by KIN to Matte following Matte's payment.  (Id. ¶ 119.)  On July 16, 2021, Matte hired a KIN-introduced candidate for the Head of Experiential position, Ms. Sebban ("Sebban"), and KIN sent Matte Invoice 0411 (the "Sebban Invoice"), requiring payment of $48,000 (id. ¶¶ 109, 110), and bringing the total owed to $94,750, exclusive of interest. With the courtesy discount withdrawn, the total owed became $101,050, exclusive of interest. (Id. ¶ 166.)

In the months that followed, Matte repeatedly demanded discounts (Compl. ¶¶ 125, 126, 138, 141, 145, 150, 156, 158), missed payment deadlines (id. ¶¶ 131, 149, 155-56), and claimed that Matte owed only $9,250 in additional payments (id. ¶ 150).  On November 9, 2021m KIN's counsel sent a draft complaint to Matte, stating that Matte owed $131,514.25, inclusive of interest and attorney's fees, as of November 8, 2021.  (Id. ¶ 157.)  On November 9,

2021, Matte sent KIN $45,250 and informed KIN that "we reject any claims that you are owed more than that." (Compl. ¶ 158.) On November 10, 2021, KIN commenced this action.

<u>DISCUSSION</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content pleaded that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The Court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor. <u>Roth v. Jennings</u>, 489 F.3d 499, 501 (2d Cir. 2007).

<u>Breach of Contract</u>

To state a claim for breach of contract under New York law,[1] a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." <u>Ellington Credit Fund Ltd.</u>

---

[1] Although both Term Sheets contain a California choice of law provision (Term Sheet ¶ 9.2, Updated Term Sheet ¶ 9.2), both parties have briefed the current motion under the apparent understanding that the Term Sheet is to be governed by New York law. The Second Circuit has held that, under such circumstances, it is appropriate for the Court to apply New York law. <u>See</u> <u>Cargill, Inc. v. Charles Kowsky Res., Inc.</u>, 949 F.2d 51, 55 (2d Cir. 1991) ("[E]ven when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law."); <u>see also</u> <u>Rolon v. U.S. Amada, Ltd.</u>, No. 95-CV-6231-LAP, 1997 WL 724798, at *2 (S.D.N.Y. Nov. 18, 1997) (Applying New York law "in spite of [California] choice of law provisions" because "the parties briefed the current motion assuming New York law should apply."). Accordingly, the Court applies New York law in deciding the instant motion.

v. Select Portfolio Servicing Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. Dec. 5, 2011) (quoting

Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)).

        Matte moves to dismiss Count I of the Complaint, for breach of contract, on the

grounds that (i) KIN fails to plead the existence of an enforceable contract; (ii) the Agreement is

barred by the Statute of Frauds; (iii) KIN fails to plead satisfaction of its own obligations; and

(iv) KIN fails to plead breach.

        "A prerequisite to any breach of contract claim is the formation of an enforceable

contract." NRW, Inc. v. Bindra, No. 12-CV-8555-RJS, 2014 WL 4449779, at *5 (S.D.N.Y.

Sept. 10, 2014) (citing Dee v. Rakower, 976 N.Y.S.2d 470, 474 (App. Div. 2d Dep't 2013)).

"Under New York Law, however, a contract may be accepted by 'conduct or acquiescence'

where, for example, an offeree never rejects a written offer but instead accepts the benefits of the

offeror's services." Cyberlease v. JP Morgan Chase Bank, No. 04-CV-1221-NRB, 2005 WL

2030317, at * 3 (S.D.N.Y. Aug. 22, 2005) (quoting John William Costello Associates, Inc. v.

Standard Metals Corp., 99 A.D.2d 227 (1st Dep't 1984)).  "We have squarely held that when a

party receives a contract, makes no clear objection to its terms, and then accepts the contract's

benefits, the benefitting party is estopped from avoiding the binding effect of the disavowed

provision." Nirvana Intern., Inc. v. ADT Sec Services, Inc., 525 Fed. Appx. 12, 13-14 (2d Cir.

2013) (citing Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1064 (2d Cir.

1993)).  "This is because '[i]t is standard contract doctrine that when a benefit is offered subject

to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the

terms of the offer, the taking constitutes an acceptance of the term, which accordingly become

binding on the offeree.'" Id. (quoting Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d

Cir. 2004)).

KIN argues that its Term Sheets constituted offers, which Matte accepted by conduct, creating an enforceable contract.  (Docket entry no. 13 ("Pl. Mem.") at 9.)  In support of its argument, KIN relies heavily on <u>John William Costello Associates</u>.  In that case, a career counseling firm located a potential candidate for a vacant employment position with defendant.  Prior to revealing the candidate's credentials, the plaintiff sent the defendant a letter informing the defendant that, if the candidate was hired, the plaintiff's fee would be equal to 30 percent of the candidate's first year compensation.  The plaintiff then revealed the candidate's name and qualifications, and the defendant hired the candidate, but argued it was not bound by plaintiff's terms because it had never signed an agreement with the plaintiff.  The court disagreed, finding that

> it is clear that [Plaintiff]'s letter . . . constituted a written offer to the defendant.  The defendant never rejected that letter.  Instead, the defendant accepted the benefits of the plaintiff's services.  By this conduct, the defendant assented to the terms set forth in the letter of August 7, 1980.

<u>John William Costello Associates</u>, 99 A.D.2d at 231.  The court further found that, because this acceptance rendered the letter a written agreement, the defendant's "affirmative defense based upon the Statute of Frauds is without merit because the defendant is bound by the terms of the [letter]."  <u>Id.</u>

The Court agrees that the First Department's analysis in <u>John William Costello Associates</u> is instructive.  Prior to conducting any work for Matte, KIN repeatedly submitted its Term Sheet or Updated Term Sheet, as appropriate, which clearly defined, <u>inter alia</u>, permitted forms of acceptance of KIN's terms, the services to be rendered, the cost of these services, the point at which KIN would become liable for these fees (<u>i.e.</u>, when the employee accepted an offer), and a timeline for payment.  (<u>See</u> Term Sheets.)  Matte repeatedly accepted the benefit of KIN's services following receipt of these terms by hiring the candidates sent to it by KIN and

requesting that KIN provide further services under the same terms.  These allegations support a claim that Matte, by its conduct, assented to the terms set forth in the Term Sheet and Updated Term Sheet, creating an enforceable contract with KIN.

Matte's arguments that (1) certain terms of the Term Sheets rare so vague as to preclude a "meeting of the minds," rendering impossible the finding that a contract existed between the parties; and (2) that the Term Sheets are barred by the Statute of Frauds are unavailing.  As to vagueness, Matte argues that paragraph 5.2 (stating that overdue fees "shall incur interest on the amount overdue in a rate in compliance with the Usury Laws applicable in the State in which the Client employs or engages the Candidate") and paragraph 7.7 (stating that liability for fees will occur "in the event of engagement of any KIN + CO. [c]andidate for 12 months from initial [i]ntroduction") are so "indefinite and hopelessly vague" "that there was clearly no meeting of the minds," rendering the Term Sheets unenforceable.  (Docket entry no. 15 ("Reply") at 7-8.)  Specifically, Matte contends that the terms "employ" and "engage," and the phrase "Usury Laws in the State in which the Client employs or engages the Candidate" (the "Usury Laws Provision"), in paragraph 5.2 are so vague as to preclude a finding of a meeting of the minds by the parties.  (Docket entry no. 11 ("Def. Mem") at 10-11.)

Matte has failed to demonstrate that paragraphs 5.2 and 7.7 render the Term Sheets impermissibly vague.  A contract is impermissibly vague where, "[b]ecause of its vague and indefinite nature, there is no 'manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'"  Denson v. Donald J. Trump for President, Inc., 530 F. Supp. 3d 412, 433 (S.D.N.Y. Mar. 30, 2021).  As KIN notes, "engagement" is defined in the Terms Sheets themselves (Term Sheets ¶ 4.6) and, while the term "employed" is not so defined, it has a plain meaning that is widely understood.  (See Pl. Mem. at

15-16) ("the word 'employ' (used throughout the Agreement) has obvious meaning[.]"); <u>see also</u>

<u>Granite/Halmar Const. Co., Inc. v. Building Material Teamsters Loc. 282, et al.</u>, 351 F. Supp. 2d

135, 138 (S.D.N.Y. Dec. 7, 2004) ("[T]o require [a party] to define every term used in the

[agreement] is unreasonable.").  Regarding the Usury Laws Provision, Matte contends that,

because the Term Sheets require compliance with Usury Laws "in the State in which the Client

employs or engages the Candidate," Matte cannot know which state's usury laws will apply in an

era of remote work.  (Def. Mem. at 11.)  While the rise of remote work has raised many

complicated legal questions, it does not render unconstitutionally vague any contract containing

a provision which allows for the application of different state laws in different factual contexts.

Further, even if the Court were to find these individual terms ambiguous, such a finding need not

result in invalidation of the Term Sheets in their entirety. [2]  <u>See</u> <u>PrecisionIR Inc. v. Clepper</u>, 693

F. Supp. 2d 286, 296 (S.D.N.Y. 2010) ("Defendants' contention that an entire contract is void by

operation of law if any one of its manifold provisions renders the entire contract unenforceable

because, for example, that provision contains an ambiguous word, simply runs against common

sense.")

        As to Matte's second argument, both parties' obligations under the Term Sheets

were capable of being performed within one year, placing them outside the Statute of Frauds

under New York law.  "A contract that is 'capable' of being performed within one year of its

making is outside the [S]tatute [of Frauds]."  <u>Zaitsev v. Salomon Bros., Inc.</u>, 60 F.3d 1001, 1003

---

[2]       As to paragraph 7.7, Matte makes no argument as to the vagueness of the text of the
provision itself, but instead contends that the provision is ambiguous because of how KIN
seeks to apply it.  (Def. Mem. at 12 ("KIN's interpretation renders [paragraph] 7.7 too
ambiguous and indefinite for there to be a meeting of the minds between the parties.").)
Matte's argument ignores the Court's mandate to determine vagueness from the text itself
in the first instance.  As it does not address the actual language of the provision, this
argument is unavailing.

(2d Cir. 1995) (internal quotation marks and citation omitted).  Even if a contract is "very unlikely to be performed within a year[,]" New York law considers the Statute of Frauds inapplicable so long as "performance is technically possible."  <u>Kaplan v. Old Mutual, PLC</u>, No. 08-CV-8366-CS, 2009 WL 10655794, at *2 (S.D.N.Y. Jul 10, 2009) (citing <u>Guilbert v. Gardner</u>, 480 F.3d 140, 151 (2d Cir. 2007)).  Here, KIN was clearly capable of placing a candidate at Matte within a year, and Matte was capable of paying KIN's fee within that same timeframe (and, indeed, was obligated under the Term Sheets to do so).

The Court has considered Matte's additional arguments and finds them insufficient to warrant dismissal of KIN's claim for breach of contract.

<u>Account Stated</u>

"An account stated is an agreement between parties to an account based on prior transactions between them with respect to the correctness of the account items and the balance due."  <u>Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.</u>, 255 F.R.D. 204, 216 (S.D.N.Y. Jul. 9, 2007) (quotation marks and citation omitted).  To state a claim for account stated, a party must plead that "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated."  <u>Camacho Mauro Mulholland LLP v. Ocean Risk Retention Group, Inc.</u>, No. 09-CV-9114, 2010 WL 2159200, at *2 (S.D.N.Y. May 26, 2010) (quotation marks and citation omitted).  Recovery on a claim for account stated is premised upon the theory that "the parties have, by their conduct, evidenced an agreement upon the balance of an indebtedness."  <u>Id</u>.  An agreement may be express or it

May sometimes result from the retention of accounts current without objection.  But the result does not always follow.  It varies with the circumstances that surround the submission of the statements and those circumstances include, of course, the relation between the parties.

<u>Newburger-Morris Co. v. Talcott</u>, 114 N.E. 846, 847 (N.Y. 1916) (Cardozo, J.) (internal citations omitted).  "The second and third requirements . . . may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment."  <u>IMG Fragrance Brands, LLC v. Houbigant, Inc.</u>, 679 F. Supp. 2d 395, 411 (S.D.N.Y. Dec. 18, 2009) (quoting <u>LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham</u>, 185 F.3d 61, 64 (2d Cir. 1999)).

KIN issued the Shah Invoice to Matte on February 25, 2020.  (Compl. ¶40.) Matte claims that it timely objected by informing KIN on May 4, 2020, that Shah's start date had been delayed.  (Def. Mem. at 20.)  KIN does not plead, however, that Matte ever disputed the amount of the Shah Invoice, and affirmatively pleads, at multiple points in the Complaint, statements by Matte that it would pay the Shah Invoice in the amount presented by KIN. (Complaint ¶¶ 45, 145.)  As such, the Court finds that KIN has pled a claim for account stated as to the Shah Invoice.

KIN issued the Barlage Invoice to Matte on October 14, 2020.  (Compl ¶ 63.). KIN alleges that Matte informed KIN that it would pay the full Barlage Invoice in four installments of $9,350 and paid the first installment on November 9, 2020, as well as most of a second installment on February 16, 2021.  (Compl. ¶¶ 63, 67, 72, 85.)  KIN therefore has pled that Matte made a partial payment as to the Barlage Invoice, satisfying the second and third factors for a claim for account stated (in addition to the first factor, presenting the account). The Court therefore finds that KIN has pled a claim for account stated as to the Barlage Invoice.

KIN issued the Kocourek Invoice to Matte on December 8, 2020, in the amount of $21,450, following KIN's granting of a "one-time courtesy discount of $6,300", which "was given presuming that Matte would actually pay the discounted invoice."  (Compl. ¶¶ 78, 79.)

KIN pleads that Matte promised, multiple times, to provide full payment of the $21,450 invoice. (Compl. ¶¶ 81, 82, 84, 88, 89, 145.)  Though KIN does not explicitly plead that Matte accepted Kocourek Invoice as correct, KIN does plead that Matte received the Kocourek Invoice and failed to question or object to it until October 5, 2021, when Kincaid "claimed that . . .he was not aware that . . . [the Kocourek Invoice] [was] outstanding."  (Compl. ¶ 145.)  As "acceptance as correct . . . is implied where a defendant receives and retains invoices without objection in a reasonable period of time," Leepson v. Allan Riley Co., Inc., No. 04-CV-3720-LTS-AJ, 2006 WL 2135806, at *4 (S.D.N.Y. Jul. 31, 2006) (citation omitted), and KIN pleads that Matte held the Kocourek Invoice for nearly ten months without objecting to its amount, KIN has stated a claim for account stated as to the Kocourek Invoice.

KIN issued the Sebban Invoice to Matte on July 16, 2021, with a due date of October 1, 2021.  (Compl. ¶ 110.)  On July 31, 2021, Matte disputed this account, claiming that the amount owed should be 15 percent, rather than 20 percent, of Sebban's total salary.  (Compl. ¶ 126.)  Because KIN pleads that Matte timely objected to the amount in the invoice, KIN does not state a claim for account stated as to the Sebban Invoice.  See Feldman v. Talon Paint Products, Inc., No. 01-CV-5657-DC, 2002 WL 31385826, at *7 (S.D.N.Y. Oct. 22, 2002) ("To prevail on a claim for account stated, [plaintiff] must demonstrate that [defendant] accepted its bills without protesting within a reasonable amount of time."); see also Bendavid v. Bendavid, No. 97-CV-6758-DLC, 1997 WL 737678, at *3 (S.D.N.Y. Nov. 28, 1997) ("There can be no account stated . . . where any dispute about the account is shown to have existed.  Where, as here, there is evidence that the defendant disagrees on the amount or fact of a debt, a claim for an account stated is properly dismissed." (quotation marks and citations omitted)).  By objecting to the amount of the Sebban Invoice just over two weeks after receiving it, Matte disputed the debt

within a reasonable amount of time.  Therefore, Matte has met its burden to demonstrate that KIN has not pled the elements of an account stated claim regarding the Sebban Invoice.  As a result, that claim is dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss the Complaint is denied as to KIN's breach of contract claim.  As to KIN's claim for account stated, the motion is granted insofar as it seeks dismissal of KIN's claim pertaining to the Sebban Invoice and is otherwise denied.

Plaintiff may move for leave to file an Amended Complaint pleading a sufficient account stated claim as to the Sebban Invoice.  Any such motion must be filed no later than 21 (twenty-one) days from the date of this Memorandum Order, (<u>i.e.</u>, by **July 5, 2023**), and must be accompanied by a memorandum of law and a copy of the proposed amended complaint that is blacklined to identify the proposed changes.  Any proposed Amended Complaint will replace the Complaint entirely and thus must include all of the factual allegations and legal claims that Plaintiffs wish to pursue.

The case in all other respects remains referred to Magistrate Judge Netburn for General Pretrial Management.

This Memorandum Order resolves docket entry no. 10.

SO ORDERED.

Dated: New York, New York
        June 13, 2023

                                                /s/ Laura Taylor Swain
                                                LAURA TAYLOR SWAIN
                                                Chief United States District Judge